## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | **Criminal No.  08-167 (RJL)** |
| | : | |
| **v.** | : | |
| | : | |
| **WILLIAM CORDOVA,** | : | |
| **also known as Centinella,** | : | |
| **also known as Mario,** | : | |
| | : | |
| **JOSE GUTIERREZ,** | : | |
| **also known Astuto,** | : | |
| **also known as Marco,** | : | |
| | : | |
| **MELVIN SORTO,** | : | |
| **also known as Killer,** | : | |
| **also known Fantasma,** | : | |
| | : | |
| **Defendants.** | : | |

_____

## GOVERNMENT'S PROPOSED JURY INSTRUCTIONS

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits the following proposed jury instructions in the above captioned matter.  In support of this filing, the Government submits that it has consulted with Thomas Abbenante, Esquire, counsel for Mr. Cordova and Mitchell M. Seltzer, Esquire, counsel for Mr. Sorto with respect to many of the preliminary jury instructions, but, the parties reserve the right to object, or modify the proposed instructions, or submit additional jury instructions to the Court.

1.      Instruction 1.103 DEFINITIONS.

A. STIPULATION OF FACT

The government and the defendants may stipulate--that is, agree--to certain facts. You should

consider any stipulation of fact to be undisputed evidence.

B. STIPULATION OF TESTIMONY

The government and the defendants may stipulate--that is, agree--to the testimony a particular

witness would have given if s/he had testified in this case. You should consider this stipulated

testimony to be exactly what this witness would have said had he or she testified here.

C.  JUDICIAL NOTICE

I may take what is called "judicial notice" of public acts, places, facts, and events that I consider

to be matters of common knowledge or matters that can be determined easily through undisputed

sources.  When I take judicial notice of a particular fact, you may [if you choose to do so,] regard

that fact as proven evidence.

2.      Instruction 1.104 QUESTION NOT EVIDENCE.

Sometimes a lawyer's question suggests the existence of a fact, but the lawyer's question alone is not evidence.  Whether or not something is in evidence depends on the witness's answer to the lawyer's question.  For example, the lawyer may ask, "The light was green, wasn't it?" and the witness answers, "No."  At that point, standing alone, there is no evidence that the light was green.  If on the other hand, the witness answers, "Yes," there would be evidence that the light was green.

3.      Instruction 1.105 NOTETAKING BY JURORS.

A. PRELIMINARY INSTRUCTION WHEN NOTETAKING IS PERMITTED

When you took your seats, you probably noticed that each of you had a notebook and pencil waiting for you.  That is because I permit jurors to take notes during trial if they wish. Whether you take notes or not is entirely up to you.  Many people find that taking notes helps them remember testimony and evidence; others find it distracts them from listening to the witnesses.

You will be permitted to take your notebooks back with you into the jury room during deliberations.  You should remember, however, that your notes are only an aid to your memory. They are not evidence in the case, and they should not replace your own memory of the evidence. Those jurors who do not take notes should rely on their own memory of the evidence and should not be influenced by another juror's notes.

Other than during your deliberations, the notebooks will remain locked in the courtroom during recesses and overnight.  You will not be able to take the notebooks with you as you come and go and you will not be permitted to take them home with you overnight.  At the end of the trial, when you come back to the courtroom to deliver your verdict, your notebooks will be collected, and the pages torn out and destroyed.  No one, including myself, will ever look at any notes you have taken, so you may feel free to write whatever you wish.

4.      Instruction 1.107 PRELIMINARY INSTRUCTION TO JURY WHERE IDENTITY OF

ALTERNATES IS NOT DISCLOSED.

You have probably noticed that there are fourteen (14) of you sitting in the jury box.

Only twelve (12) of you will retire to deliberate in this matter.  Before any of you even entered

the courtroom, we randomly selected the alternates' seats.  I will not disclose who the alternate

jurors are until the end of my final instructions just before you begin your deliberations.  As any

seat might turn out to be an alternate's seat, it is important that each of you think of yourselves as

regular jurors during this trial, and that all of you give this case your fullest and most serious

attention.

5.      Instruction 1.110 WITNESS'S OR DEFENDANT'S USE OF

INTERPRETER--PRELIMINARY INSTRUCTION.

Witnesses and defendants will use the services of a Spanish speaking interpreter in this

trial.

The interpreter is provided by the court and is a neutral participant in this trial. You

should not be biased for or against anyone who uses an interpreter.  Do not permit the fact that a

witness or a defendant is using the services of an interpreter to influence you in any way.

6.      Instruction 1.202 CAUTIONARY INSTRUCTION ON PUBLICITY

AND USE OF THE INTERNET.

In some cases, although not necessarily this one, there may be reports in the newspaper or

on the radio, internet, or television concerning the case while the trial is going on.  If there should

be such media coverage in this case, you may be tempted to read, listen to, or watch it.  You must

not read, listen to, or watch such reports because you must decide this case solely on the evidence

presented in this courtroom.  If any publicity about this trial inadvertently comes to your attention

during trial, do not discuss it with other jurors or anyone else.  Just let me or my clerk know as

soon after it happens as you can, and I will then briefly discuss it with you.

You may not communicate with anyone not on the jury about this case.  This includes any

electronic communication such as email or text or any blogging about the case.  In addition, you

may not conduct any independent investigation during deliberations.  This means you may not

conduct any research in person or electronically via the internet or in another way.

7.      Instruction 1.204 WITNESS'S OR DEFENDANT'S USE OF INTERPRETER--BEFORE

WITNESS OR DEFENDANT TESTIFIES.

I have appointed a qualified interpreters to assist government witnesses and the

defendants during the trial. The interpreters will interpret only what is said and will not add,

omit, or summarize anything.  The interpreters in this case will vary during the trial.  Oaths will

be administered to each interpreter.

*Oath to Interpreter*

*Do you swear or affirm to accurately interpret from English to Spanish and from*

*Spanish to English to the best of your ability?*

Non-English Testimony

You will hear testimony from government witnesses who will be testifying in Spanish through

the official court interpreter. Although some of you may know Spanish, it is important that all

jurors consider the same evidence. Therefore, you must accept the English translation of his/her

testimony.

If, however, during the testimony you have a question as to the accuracy of the English

interpretation, you should bring this matter to my attention immediately by raising your hand.

You should not ask your question or make any comment about the interpretation in the presence

of the other jurors, or otherwise share your question or concern with any of them.  I will take

steps to see if your question can be answered and any discrepancy resolved.  If, however, after

such efforts a discrepancy remains, you must rely only upon the official English interpretation as

provided by the court interpreter and not your own interpretation.

You should also understand that witnesses may nod their heads during interpretation, and

that this does not necessarily indicate agreement or an affirmative answer. It may merely indicate that the witnesses are following the translation.

You should not consider the mere fact that government witnesses have been provided an interpreter in evaluating their credibility. You must evaluate interpreted testimony as you would any other testimony. That is, you must not give interpreted testimony any greater or lesser weight than you would if the witness had spoken English.

The fact that the court has provided an interpreter to a government witness or a defendant does not mean that the court has made a ruling on the extent of his/her ability to speak or understand the English language. Use of an interpreter should not be considered evidence in this case.

8.      Instruction 2.100 FURNISHING THE JURY WITH A COPY OF THE

INSTRUCTIONS.

I will provide you with a copy of my instructions. During your deliberations, you may, if

you want, refer to these instructions. While you may refer to any particular portion of the

instructions, you are to consider the instructions as a whole and you may not follow some and

ignore others. If you have any questions about the instructions, you should feel free to send me a

note. Please return your instructions to me when your verdict is rendered

9.       Instruction 2.101 FUNCTION OF THE COURT.

My function is to conduct this trial in an orderly, fair, and efficient manner; to rule on questions of law; and to instruct you on the law that applies in this case.

It is your duty to accept the law as I instruct you. You should consider all the instructions as a whole. You may not ignore or refuse to follow any of them.

10.     Instruction 2.102 FUNCTION OF THE JURY.

Your function, as the jury, is to determine what the facts are in this case. You are the sole judges of the facts. While it is my responsibility to decide what is admitted as evidence during the trial, you alone decide what weight, if any, to give to that evidence. You alone decide the credibility or believability of the witnesses.

You should determine the facts without prejudice, fear, sympathy, or favoritism. You should not be improperly influenced by anyone's race, ethnic origin, or gender. Decide the case solely from a fair consideration of the evidence.

You may not take anything I may have said or done as indicating how I think you should decide this case. If you believe that I have expressed or indicated any such opinion, you should ignore it. The verdict in this case is your sole and exclusive responsibility

11.     Instruction 2.103 JURY'S RECOLLECTION CONTROLS.

        If any reference by me or the attorneys to the evidence is different from your own

memory of the evidence, it is your memory that should control during your deliberations

12.     Instruction 2.104 EVIDENCE IN THE CASE--JUDICIAL NOTICE, STIPULATIONS, DEPOSITIONS.

During your deliberations, you may consider only the evidence properly admitted in this trial. The evidence in this case consists of the sworn testimony of the witnesses, the exhibits that were admitted into evidence, the facts, if any, of which I took judicial notice, and the facts and testimony, if any, stipulated to by the parties.

I may take what is called "judicial notice" of public acts, places, facts, and events that I consider to be matters of common knowledge or matters that can be determined easily through undisputed sources.  When I take judicial notice of a particular fact, you may if you choose to do so,]regard that fact as proven evidence.  Because you are the sole judges of the facts, however, you are not required to accept any fact that is judicially noted.

During the trial, you may be told that the parties have stipulated--that is, agreed--to certain facts. You should consider any stipulation of fact to be undisputed evidence.]

During the trial, you may be told that the parties have stipulated--that is, agreed--to what testimony a witness would have given if s/he had testified in this case. You should consider this stipulated testimony to be exactly what s/he would have said had s/he testified here.

When you consider the evidence, you are permitted to draw, from the facts that you find have been proven, such reasonable inferences as you feel are justified in the light of your experience.

13.     Instruction 2.105 STATEMENTS OF COUNSEL.

The statements and arguments of the lawyers are not evidence. They are only intended to assist you in understanding the evidence.

14.      Instruction 2.106 INDICTMENT OR INFORMATION NOT EVIDENCE.

The indictment is merely the formal way of accusing a person of a crime. You must not consider the indictment  as evidence of any kind--you may not consider it as any evidence of name of defendant's guilt or draw any inference of guilt from it.

15.     Instruction 2.107 BURDEN OF PROOF--PRESUMPTION OF INNOCENCE .

Every defendant in a criminal case is presumed to be innocent. This presumption of innocence remains with the defendant throughout the trial unless and until the government has proven s/he is guilty beyond a reasonable doubt. This burden never shifts throughout the trial. The law does not require a defendant to prove his/her innocence or to produce any evidence at all. If you find that the government has proven beyond a reasonable doubt every element of a particular offense with which a defendant is charged, it is your duty to find him guilty of that offense. On the other hand, if you find the government has failed to prove any element of a particular offense beyond a reasonable doubt, it is your duty to find name of defendant not guilty of that offense.

16.     Instruction 2.108 REASONABLE DOUBT.

The government has the burden of proving a defendant guilty beyond a reasonable doubt. In civil cases, it is only necessary to prove that a fact is more likely true than not, or, in some cases, that its truth is highly probable. In criminal cases such as this one, the government's proof must be more powerful than that. It must be beyond a reasonable doubt. Reasonable doubt, as the name implies, is a doubt based on reason--a doubt for which you have a reason based upon the evidence or lack of evidence in the case. If, after careful, honest, and impartial consideration of all the evidence, you cannot say that you are firmly convinced of the defendant's guilt, then you have a reasonable doubt.

Reasonable doubt is the kind of doubt that would cause a reasonable person, after careful and thoughtful reflection, to hesitate to act in the graver or more important matters in life. However, it is not an imaginary doubt, nor a doubt based on speculation or guesswork; it is a doubt based on reason. The government is not required to prove guilt beyond all doubt, or to a mathematical or scientific certainty. Its burden is to prove guilt beyond a reasonable doubt.

17.     Instruction 2.109 DIRECT AND CIRCUMSTANTIAL EVIDENCE.

There are two types of evidence from which you may determine what the facts are in this case--direct evidence and circumstantial evidence. When a witness, such as an eyewitness, asserts actual knowledge of a fact, that witness's testimony is direct evidence. On the other hand, evidence of facts and circumstances from which reasonable inferences may be drawn is circumstantial evidence.

Let me give you an example. Assume a person looked out a window and saw that snow was falling. If he later testified in court about what he had seen, his testimony would be direct evidence that snow was falling at the time he saw it happen. Assume, however, that he looked out a window and saw no snow on the ground, and then went to sleep and saw snow on the ground after he woke up. His testimony about what he had seen would be circumstantial evidence that it had snowed while he was asleep.

The law says that both direct and circumstantial evidence are acceptable as a means of proving a fact. The law does not favor one form of evidence over another. It is for you to decide how much weight to give to any particular evidence, whether it is direct or circumstantial. You are permitted to give equal weight to both. Circumstantial evidence does not require a greater degree of certainty than direct evidence. In reaching a verdict in this case, you should consider all of the evidence presented, both direct and circumstantial.

18.     Instruction 2.110 NATURE OF CHARGES NOT TO BE CONSIDERED.

One of the questions you were asked when we were selecting this jury was whether the nature of the charges itself would affect your ability to reach a fair and impartial verdict. We asked you that question because you must not allow the nature of a charge to affect your verdict. You must consider only the evidence that has been presented in this case in reaching a fair and impartial verdict.

19.     Instruction 2.111 NUMBER OF WITNESSES.

The weight of the evidence is not necessarily determined by the number of witnesses testifying for each side. Rather, you should consider all the facts and circumstances in evidence to determine which of the witnesses you believe. You might find that the testimony of a smaller number of witnesses on one side is more believable than the testimony of a greater number of witnesses on the other side or you might find the opposite.

20.     Instruction 2.112 INADMISSIBLE AND STRICKEN EVIDENCE.

The lawyers in this case sometimes objected when the other side asked a question, made an argument, or offered evidence that the objecting lawyer believed was not proper. You must not hold such objections against the lawyer who made them or the party s/he represents. It is the lawyers' responsibility to object to evidence that they believe is not admissible.

If, during the course of the trial, I sustained an objection to a lawyer's question, you should ignore the question, and you must not speculate as to what the answer would have been. If, after a witness answered a question, I ruled that the answer should be stricken, you should ignore both the question and the answer and they should play no part in your deliberations. Likewise, exhibits as to which I have sustained an objection or that I ordered stricken are not evidence, and you must not consider them in your deliberations.

21.     Instruction 2.200 CREDIBILITY OF WITNESSES.

In determining whether the government has established the charges against a defendant beyond a reasonable doubt, you must consider and weigh the testimony of all the witnesses who have appeared before you.

You are the sole judge of the credibility of the witnesses. In other words, you alone are to determine whether to believe any witness and the extent to which any witness should be believed.

In reaching a conclusion as to the credibility of any witness, you may consider any matter that may have a bearing on the subject. You may consider the demeanor and the behavior of the witness on the witness stand; the witness's manner of testifying; whether the witness impresses you as a truthful person; whether the witness impresses you as having an accurate memory and recollection; whether the witness has any motive for not telling the truth; whether the witness had a full opportunity to observe the matters about which he or she has testified; whether the witness has any interest in the outcome of this case, or friendship or hostility toward other people concerned with this case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit such testimony. Two or more persons witnessing an incident or transaction may see or hear it differently; an innocent mis-recollection, like a failure of recollection, is not an uncommon experience. In weighing the effect of the inconsistency or discrepancy, always consider whether it pertains to a matter of important or unimportant detail, and whether the inconsistency or discrepancy results from innocent error or intentional falsehood.

You may consider the reasonableness or unreasonableness, the probability or

improbability, of the testimony of a witness in determining whether to accept it as true and accurate. You may consider whether the witness has been contradicted or supported by other credible evidence.

If you believe that any witness has shown him or herself to be biased or prejudiced, for or against either side in this trial, you may consider and determine whether such bias or prejudice has colored the testimony of the witness so as to affect the desire and capability of that witness to tell the truth.

You should give the testimony of each witness such weight as in your judgment it is fairly entitled to receive.

22.     Instruction 2.202 ACCOMPLICE'S TESTIMONY.

You have heard testimony from accomplice witnesses. The government is permitted to use a witness who testifies that s/he participated in the offenses charged against the defendants, although the testimony of such a witness should be considered with caution. You should give his/her testimony as much weight as in your judgment it deserves.

23.     Instruction 2.203 WITNESS WITH A PLEA AGREEMENT.

You have heard evidence that [name of witness] entered into a plea agreement with the government pursuant to which [name of witness] agreed to testify truthfully in this case and the government agreed to [dismiss a charge against him/her] [and] [decline prosecution of a charge against him/her] [and] [bring [name of witness's] cooperation to the attention of his/her sentencing judge] [and] [consider filing papers with his/her judge which would permit that judge to impose a more lenient sentence than that judge might otherwise be able to impose].

The government is permitted to enter into this kind of plea agreement. You, in turn, may accept the testimony of such a witness and convict the defendant on the basis of this testimony alone, if it convinces you of the defendant's guilt beyond a reasonable doubt. A witness who has entered into a plea agreement is under the same obligation to tell the truth as is any other witness; the plea agreement does not protect him/her against a prosecution for perjury or false statement, should s/he lie under oath.

However, you may consider whether a witness who has entered into such an agreement has an interest different from other types of witnesses. You may consider whether the plea agreement the witness entered into with the government has motivated him/her to testify falsely against the defendant. The testimony of a witness who has entered into a plea agreement should be considered with caution. You should give the testimony as much weight as in your judgment it deserves.

24.     Instruction 2.205 INFORMER'S TESTIMONY.

You have heard evidence that [name of witness] is an informer. S/he has an arrangement with the government [to help the government obtain introductions to persons suspected of violating the law] [and] [to help the government obtain information]. In exchange, s/he receives [a benefit in a pending case] [money] [and] [other personal benefit]. The use of such persons is a recognized means of detecting criminal conduct and the government is permitted to call such persons as witnesses.

However, when an informer testifies, his/her testimony should be considered with caution. You may consider whether the benefit this person receives from the government has motivated him/her to testify falsely against the defendant. You should give the testimony as much weight as in your judgment it deserves.

25.     Instruction 2.206 PERJURER'S TESTIMONY.

The testimony of an admitted perjurer should be considered with caution and scrutinized

with care.

26.     Instruction 2.207 POLICE OFFICER'S TESTIMONY.

A police officer's testimony should be evaluated by you just as any other evidence in the case. In evaluating the officer's credibility, you should use the same guidelines that you apply to the testimony of any witness. In no event should you give either greater or lesser weight to the testimony of any witness merely because s/he is a police officer.

27.     Instruction 2.208 RIGHT OF DEFENDANT NOT TO TESTIFY.

Every defendant in a criminal case has an absolute right not to testify. [Name of defendant] has chosen to exercise this right. You must not hold this decision against him/her, and it would be improper for you to speculate as to the reason or reasons for his/her decision. You must not assume the defendant is guilty because he chose not to testify.

28.     Instruction 2.209 DEFENDANT AS WITNESS.

A defendant has a right to become a witness in his/her own behalf. His testimony should not be disbelieved merely because he is the defendant. In evaluating his/her testimony, however, you may consider the fact that the defendant has a vital interest in the outcome of this trial. As with the testimony of any other witness, you should give the defendant's testimony as much weight as in your judgment it deserves.

29.     Instruction 2.215 EXPERT TESTIMONY.

Ordinarily, a witness may not testify as to his/her opinions or conclusions. There is an exception for expert witnesses, who are allowed to give opinions, and the reasons for them because they have become expert in some art, science, profession, or calling.

In this case, certain persons will testify as experts concerning regarding specific subjects. You are not bound by an expert's opinion. If you find that the opinion is not based on sufficient education or experience, that the reasons supporting the opinion are not sound, or that the opinion is outweighed by other evidence, you may completely or partially disregard the opinion. You should consider this evidence with all the other evidence in the case and give it as much weight as you think it fairly deserves.

30.     Instruction 2.216 EVALUATION OF PRIOR INCONSISTENT STATEMENT OF A

WITNESS.

The law treats prior inconsistent statements differently depending on the circumstances in

which they were made. I will now explain how you should evaluate those statements.

You have heard evidence that [name of witness] made a statement on an earlier occasion

and that this statement may be inconsistent with his/her testimony here at trial. It is for you to

decide whether the witness made such a statement and whether in fact it was inconsistent with

the witness's testimony here. If you find such an inconsistency, you may consider the earlier

statement in judging the credibility of the witness, but you may not consider it as evidence that

what was said in the earlier statement was true.

You also have heard evidence that [name of witnesses] made an earlier statement under

oath, subject to the penalty of perjury at the grand jury and that this statement [s] may be

inconsistent with [his] [her] [their] testimony here at trial. If you find that the earlier statement is

inconsistent with the witness's testimony here in court, you may consider this inconsistency in

judging the credibility of the witness.  However, unlike statements not made under oath, you also

may consider this earlier statement as evidence that what was said in the earlier statement was

true.

31.     Instruction 2.217 EVALUATION OF PRIOR CONSISTENT STATEMENT OF A
WITNESS.

        You have heard evidence that [name of witness] or [name of defendant] made a statement
on an earlier occasion and that this statement may be consistent with his/her testimony here at
trial. This earlier statement was brought to your attention both to help you in evaluating the
credibility of the witness and as evidence in this case. In other words, if you find that the earlier
statement is consistent with the witness's present testimony in court, you may consider this
consistency both in judging the credibility of the witness here at trial and as proof that what was
said in the earlier statement was true.

        It is for you to decide whether a witness made a statement on an earlier occasion and
whether it was in fact consistent with the witness's in-court testimony here.

32.     Instruction 2.218 IMPEACHMENT BY PROOF OF CONVICTION OF A

CRIME--WITNESS.

You have heard evidence that [name of witness] has been convicted of a crime. You may

consider this conviction only in evaluating the credibility of that witness's testimony in this case.

33.     Instruction 2.219 IMPEACHMENT BY PROOF OF PENDING CASE, PROBATION

OR PAROLE--WITNESS.

You have heard evidence that [name of witness] is [charged with a crime] [awaiting

sentence].  You may consider this evidence when deciding whether the witness has a bias in

favor of one of the parties that may affect his/her willingness to tell the truth.

34.      Instruction 2.301 FLIGHT OR CONCEALMENT BY DEFENDANT.

You have heard evidence that [name of defendant] fled or hid after the [name the event] from the police. It is up to you to decide whether he fled or hid. If you find he did so, you may consider his fleeing or hiding as tending to show feelings of guilt, which you may, in turn, consider as tending to show actual guilt. On the other hand, you may also consider that [name of defendant] may have had reasons to flee or hide that are fully consistent with innocence in this case.

If you find [name of defendant] fled or hid, you should consider such evidence along with all the other evidence in the case, and give it as much weight as you think it deserves.

35.     Instruction 2.304 ATTEMPTED BRIBERY, COERCION OR INTIMIDATION OF

WITNESS.

You have heard evidence that [name of defendant] may have attempted to persuade

[name of witness] to [testify falsely] [not to testify]. It is up to you to decide if he attempted to

persuade [name of witness] [not to testify] [to testify and if such testimony would have been

false]. If you find he did so, you may consider this evidence as tending to show his/her feelings of

guilt, which you may, in turn, consider as tending to show actual guilt. On the other hand, you

may also consider s/he may have attempted to persuade [name of witness] for reasons fully

consistent with innocence in this case.

If you find that [name of defendant] attempted to persuade [name of witness] to [testify

falsely] [not to testify], you should consider this evidence along with all the other evidence in the

case and give it as much weight you think it fairly deserves.

36.     Instruction 2.305 STATEMENTS OF THE DEFENDANT--SUBSTANTIVE
EVIDENCE.

You have heard evidence that [name of defendant] made statements to the police about the crime charged. [You should consider all the circumstances, [including whether the police recorded the statement], in deciding whether he made the statement.] [If you find that he did make the statement,] [Y]ou must decide how much weight to give the statement. For example, you may consider whether he made the statement voluntarily and understood what s/he was saying. You may consider whether he was forced, threatened, or pressured, either physically or psychologically, and whether s/he was promised any reward or benefit for making the statement. You may consider all of the conversations between him and the police. You may consider whether the police warned him/her of his rights. You may consider where and when the statement was given; the duration of any questioning; who was present during some or all of the questioning of the defendant; and whether the police recorded some or all of the conversations. You may consider the age, education, experience, intelligence and the physical and mental condition of the defendant.

37.     Instruction 2.306 DEFENDANT'S STATEMENTS--CORROBORATION.

A defendant cannot be convicted solely on his own statements concerning the elements of the offense that he made out of court. Therefore, you must not consider the statements allegedly made by the defendant unless you find that there is substantial independent evidence that tends to establish the reliability of these statements. This supporting evidence may be direct or circumstantial or both.

You must find the defendant not guilty, unless the independent evidence and the defendant's statements, taken as a whole, establish each of the elements of the offense beyond a reasonable doubt.

38.    Instruction 2.307 MOTIVE.

Motive is not an element of the offenses charged, and the government is not required to prove motive in this case. You may, however, consider evidence of motive or lack of evidence of motive in deciding whether or not the government has proved the charges beyond a reasonable doubt.

39.     Instruction 2.308 EVIDENCE ADMITTED AGAINST ONE DEFENDANT ONLY.

[Identify evidence/statement admitted only against a particular defendant] was admitted only with respect to [name of particular defendant], and it was not admitted against [name(s) of other defendant(s)]. You may consider such evidence only with respect [name of defendant]. You must not consider it in any way in your deliberations with respect to [names of other defendant(s)].

40.      Instruction 2.310 TRANSCRIPTS OF TAPE RECORDINGS.

Recordings of conversations identified by witnesses have been received in evidence.
Transcripts of these recorded conversations are being furnished for your convenience and
guidance as you listen to the tapes to clarify portions of the tape which are difficult to hear, and
to help you identify speakers. The recordings, however, are the evidence in the case; the
transcripts are not. If you notice any difference between the transcripts and the recordings, you
must rely only on the recordings and not the transcripts. In addition, if you cannot determine from
the recording that particular words were spoken, you must disregard the transcripts as far as those
words are concerned.

41.     Instruction 2.311 TRANSLATION OF FOREIGN LANGUAGE DOCUMENT OR

RECORDING.

You are about to listen to or watch a recording in Spanish. Each of you has been given a

transcript that translates the recording into English. I have admitted a document that is in Spanish

along with an English translation.

Although some of you may know Spanish, it is important that all jurors consider the same

evidence. Therefore, you must accept the English translation contained in the transcript.

If, however, you have a question as to the accuracy of the English translation, you should

bring this matter to my attention immediately by raising your hand. You should not ask your

question or make any comment about the translation in the presence of the other jurors, or

otherwise share your question or concern with any of them. I will take steps to see if your

question can be answered and any discrepancy resolved. If, however, after such efforts a

discrepancy remains, you must rely only upon the official English translation provided by the

court interpreter and not on your own translation.

42.     Instruction 2.321 OTHER CRIMES EVIDENCE.

A. EVIDENCE OF OTHER CRIMES ADMITTED TO SHOW MOTIVE, IDENTITY OR

COMMON SCHEME OR PLAN

You have heard evidence that [name of defendant] [describe other crimes evidence]. It is

up to you to decide whether to accept that evidence.

If you find that [name of defendant] [describe the other crimes conduct], you may use this

evidence only for the limited purpose of deciding whether

1.      [Name of defendant] had a motive to commit the [name of offense[s]] charged in

the [indictment] [information].

2.      The circumstances of the other crimes and charged offense[s] are so similar that it

is likely that the person who [describe the other crimes conduct] also committed the [name of

offense[s]] charged in the [indictment] [information].

3.      The [describe the other crimes conduct] and the [name of offense[s]] charged in

the [indicment] [information] are part of a common scheme or plan.

If you conclude that

1.      [Name of defendant] had such a motive.

2.      The [describe the other crimes conduct] is so similar to the charged offense[s] that

it is likely that the same person committed both of them.

3.      There was a common scheme or plan.

You may use this evidence in determining whether the government has proved beyond a

reasonable doubt that [Name of defendant] is the person who committed the [name of offense[s]]

charged in the indictment [Name of defendant] [insert purpose for which the evidence was

introduced].

You may not use this evidence for any other purpose. [Name of defendant] is only on trial for the crimes charged. The defendant is not charged in this case with any offense relating to [describe the other crimes conduct], and you may not use this evidence to conclude that [name of defendant] has a bad character, or that [name of defendant] has a criminal personality. The law does not allow you to convict a defendant simply because you believe he may have done bad things not specifically charged as crimes in this case.

## B. EVIDENCE OF OTHER CRIMES ADMITTED TO SHOW INTENT, ABSENCE MISTAKE OR ACCIDENT OR KNOWLEDGE

You have heard evidence that the defendant [describe other crimes evidence]. It is up to you to decide whether to accept that evidence.

You must first decide, without considering [describe other crimes evidence] at all, whether the government has proved beyond a reasonable doubt that [name of defendant [insert actus reus]. If you find that the government has proved beyond a reasonable doubt, that the defendant [insert actus reus], then you may consider the evidence that the defendant [describe other crimes evidence].

If you find that the defendant [describe other crimes evidence], you may use this evidence only for the limited purpose of deciding/determining whether the government has proved beyond a reasonable doubt that [name of defendant] [intended to [insert object of intent] [acted knowingly and on purpose, and not by mistake or by accident] [knew that [insert purpose for which the evidence was introduced]].

You may not use this evidence for any other purpose. [Name of defendant] is only on trial

for the crimes charged. [Name of defendant] is not charged in this case with any offense relating to [describe the other crimes conduct], and you may not use this evidence to conclude that the defendant has a bad character, or that [name of defendant] has a criminal personality. The law does not allow you to convict a defendant simply because you believe he may have done bad things not specifically charged as crimes in this case.

43.     Instruction 2.404 MULTIPLE DEFENDANTS--MULTIPLE COUNTS.

Each count of the indictment charges a separate offense. Moreover, each defendant is entitled to have the issue of his guilt as to each of the crimes for which he is on trial determined from his own conduct and from the evidence that applies to him as if he were being tried alone. You should, therefore, consider separately each offense, and the evidence which applies to it, and you should return separate verdicts as to each count of the indictment, as well as to each defendant unless I specifically instruct you to do otherwise.

The fact that you may find any one defendant guilty or not guilty on any one count of the indictment should not influence your verdict with respect to any other count of the indictment for that defendant. Nor should it influence your verdict with respect to any other defendant as to that count or any other count in the indictment. Thus, you may find any one or more of the defendants guilty or not guilty on any one or more counts of the indictment, and you may return different verdicts as to different defendants and as to different counts. At any time during your deliberations you may return your verdict of guilty or not guilty with respect to any defendant on any count.

44.     Instruction 2.405 UNANIMITY--GENERAL.

A verdict must represent the considered judgment of each juror, and in order to return a

verdict, each juror must agree on the verdict. In other words, your verdicts must be unanimous.

45.     Instruction 2.407 VERDICT FORM EXPLANATION.

You will be provided with a Verdict Form for use when you have concluded your deliberations. The form is not evidence in this case, and nothing in it should be taken to suggest or convey any opinion by me as to what the verdict should be. Nothing in the form replaces the instructions of law I have already given you, and nothing in it replaces or modifies the instructions about the elements which the government must prove beyond a reasonable doubt. The form is meant only to assist you in recording your verdict.

46.      Instruction 2.500 REDACTED DOCUMENTS AND TAPES.

During the course of this trial, a number of exhibits were admitted in evidence. Sometimes only those parts of an exhibit that are relevant to your deliberations were admitted. Where this has occurred, I have required the irrelevant parts of the statement to be blacked out or deleted. Thus, as you examine the exhibits, and you see or hear a statement where there appear to be omissions, you should consider only the portions that were admitted. You should not guess as to what has been taken out.

47.     Instruction 2.501 EXHIBITS DURING DELIBERATIONS.

I will be sending into the jury room with you the exhibits that have been admitted into evidence except for the weapon(s), ammunition, other contraband, and recordings only partially admitted. You may examine any or all of them as you consider your verdicts. Please keep in mind that exhibits that were only marked for identification but were not admitted into evidence will not be given to you to examine or consider in reaching your verdict.

If you wish to examine the weapons, ammunition, unsealed drugs, other contraband, please notify the clerk by a written note, and the marshal will bring them to you. For security purposes, the marshal will remain in the jury room while each of you has the opportunity to examine this evidence. You should not discuss the evidence or otherwise discuss the case among yourselves while the marshal is present in the jury room. You may ask to examine this evidence as often as you find it necessary.]

If you wish to see, hear those portions of [describe recordings] which I have admitted into evidence, please notify the clerk by a written note and we will assemble in the courtroom with the appropriate equipment.

48.     Instruction 2.502 SELECTION OF FOREPERSON.

When you return to the jury room, you should first select a foreperson to preside over your deliberations and to be your spokesperson here in court. There are no specific rules regarding how you should select a foreperson. That is up to you. However, as you go about the task, be mindful of your mission--to reach a fair and just verdict based on the evidence. Consider selecting a foreperson who will be able to facilitate your discussions, who can help you organize the evidence, who will encourage civility and mutual respect among all of you, who will invite each juror to speak up regarding his or her views about the evidence, and who will promote a full and fair consideration of that evidence.

49.      Instruction 2.505 POSSIBLE PUNISHMENT NOT RELEVANT.

The question of possible punishment of the defendant in the event a conviction is not a concern of yours and should not enter into or influence your deliberations in any way. The duty of imposing sentence in the event of a conviction rests exclusively with me. Your verdict should be based solely on the evidence in this case, and you should not consider the matter of punishment at all.

50.     Instruction 2.507 WITNESS'S OR DEFENDANT'S USE OF INTERPRETER--FINAL
 INSTRUCTION.

A. FOR USE WHEN DEFENDANT DID NOT TESTIFY AND NO OTHER WITNESS USED

AN INTERPRETER

The defendants used the services of an interpreter in this trial. As I have previously

instructed you, you should not be biased for or against [name of defendant] for using an

interpreter. Do not permit that fact to influence you in any way.

The fact that the court has provided an interpreter to the defendants does not mean that

the court has made a ruling on the extent of his ability to speak or understand the English

language. Use of an interpreter should not be considered evidence in this case.

B. FOR USE WHEN A WITNESS OR DEFENDANT TESTIFIED WITH

THE ASSISTANCE OF AN INTERPRETER

You have heard testimony from witnesses, who communicated through an interpreter and

the [name of defendant] used the services of an interpreter in this trial.

You are to consider only the evidence provided through the official court interpreters.

Although some of you may know Spanish, it is important that all jurors consider the same

evidence. Therefore, you must base your decision on the evidence presented in the English

interpretation. You must disregard any different meaning. [During the testimony there was a

question as to the accuracy of the English interpretation and steps were taken to resolve any

discrepancies. I emphasize that you must rely only upon the official English interpretation as

provided by the court interpreter.]

As I have previously instructed you, you should not be biased for or against anyone who

uses an interpreter. Do not permit the fact that [name of witness] [name of defendant] is using the services of an interpreter to influence you in any way.

You should not consider the mere fact that [name of witness] [name of defendant] has been provided an interpreter in evaluating his/her credibility. You must evaluate interpreted testimony as you would any other testimony. That is, you must not give interpreted testimony any greater or lesser weight than you would if the witness had spoken English.

If you observed that the witness nodded his/her head during interpretation, you should consider that this did not necessarily indicate agreement or an affirmative answer but may have only indicated that the witness was following the translation.

The fact that the court has provided an interpreter to [name of witness] [name of defendant] does not mean that the court has made a ruling on the extent of his/her ability to speak or understand the English language. Use of an interpreter should not be considered evidence in this case.

51.     Instruction 2.508 CAUTIONARY INSTRUCTION ON PUBLICITY,

COMMUNICATION AND RESEARCH.

I would like to remind you that, in some cases, although not necessarily this one, there may be reports in the newspaper or on the radio, internet, or television concerning this case. If there should be such media coverage in this case, you may be tempted to read, listen to, or watch it. You must not read, listen to, or watch such reports because you must decide this case solely on the evidence presented in this courtroom. If any publicity about this trial inadvertently comes to your attention, do not discuss it with other jurors or anyone else. Just let me or my clerk know as soon after it happens as you can, and I will then briefly discuss it with you.

As you retire to the jury room to deliberate, I also wish to remind you of an instruction I gave you at the beginning of the trial. During deliberations, you may not communicate with anyone not on the jury about this case. This includes any electronic communication such as email or text or any blogging about the case. In addition, you may not conduct any independent investigation during deliberations. This means you may not conduct any research in person or electronically via the internet or in another way.

52.      Instruction 2.509 COMMUNICATIONS BETWEEN COURT AND JURY

DURING JURY'S DELIBERATIONS.

If it becomes necessary during your deliberations to communicate with me, you may send

a note by the clerk or marshal, signed by your foreperson or by one or more members of the jury.

No member of the jury should try to communicate with me except by such a signed note, and I

will never communicate with any member of the jury on any matter concerning the merits of this

case, except in writing or orally here in open court.

Bear in mind also that you are never, under any circumstances, to reveal to any

person--not the clerk, the marshal or me--how jurors are voting until after you have reached a

unanimous verdict. This means that you should never tell me, in writing or in open court, how

the jury is divided on any matter--for example, 6-6 or 7-5 or 11-1, or in any other

fashion--whether the vote is for conviction or acquittal or on any other issue in the case.

53.     Instruction 3.101 PROOF OF STATE OF MIND.

Someone's [intent] [knowledge] [insert other appropriate state of mind] ordinarily cannot be proved directly, because there is no way of knowing what a person is actually thinking, but you may infer the someone's [intent] [knowledge] [other appropriate state of mind] from the surrounding circumstances. You may consider any statement made or acts [done] [omitted] by [name of the defendant], and all other facts and circumstances received in evidence which indicate his/her [intent] [knowledge] [other appropriate state of mind].

You may infer, but are not required to infer, that a person intends the natural and probable consequences of acts s/he intentionally did or did not do. It is entirely up to you, however, to decide what facts to find from the evidence received during this trial. You should consider all the circumstances in evidence that you think are relevant in determining whether the government has proved beyond a reasonable doubt that [name of the defendant] acted with the necessary state of mind.

54.     Instruction 3.102 WILLFULLY CAUSING AN ACT TO BE DONE , 18 U.S.C. § 2(b).

You may find [name of defendant] guilty of the crime charged in the indictment without finding that he personally committed each of the acts constituting the offense or was personally present at the commission of the offense. A defendant is responsible for an act which s/he willfully causes to be done if the act would be criminal if performed by him/her directly or by another. To "cause" an act to be done means to bring it about. You may convict [name of defendant] of the offense charged if you find that the government has proved beyond a reasonable doubt each element of the offense and that [name of defendant] willfully caused such an act to be done, with the intent to commit the crime.

55.     Instruction 3.103 "ON OR ABOUT"--PROOF OF.

The indictment charges that the offense of conspiracy to commit violent crimes was committed "on or about" June 2006 and continuing through June 2007.  The proof need not establish with certainty the exact date of the alleged offense. It is sufficient if the evidence in the case establishes beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged.

56.     Instruction 3.104 POSSESSION--DEFINED.

Possession means to have physical possession or to otherwise exercise control over tangible property. A person may possess property in either of two ways. First, the person may have physical possession of it by holding it in his or her hand or by carrying it in or on his or her body or person. This is called "actual possession."  Second, a person may exercise control over property not in his or her physical possession if that person has both the power and the intent at a given time to control the property.  This is called "constructive possession."

In addition, the law recognizes the possibility that two or more individuals can jointly have property in their constructive possession. Two or more persons have property in their joint constructive possession when they each have both the power and the intent at a given time to control the property.

Mere presence near something or mere knowledge of location, however, is not enough to show possession. To prove possession of [describe item] against [name of defendant] [a specific defendant] in this case, the government must prove beyond a reasonable doubt that s/he had either actual or constructive possession of [it] [them].

57.     Instruction 3.200 AIDING AND ABETTING, D.C. Official Code § 22-1805 (2001), 18

U.S.C. § 2(a).

You may find a defendant guilty of the crime charged in the indictment without finding

that he personally committed each of the acts that make up the crime or that he was present while

the crime was being committed. Any person who in some way intentionally participates in the

commission of a crime can be found guilty either as an aider and abettor or as a principal

offender. It makes no difference which label you attach. The person is as guilty of the crime as he

would be if he had personally committed each of the acts that make up the crime.

To find that a defendant aided and abetted in committing a crime, you must find that the

defendant knowingly associated himself with the commission of the crime, that he participated in

the crime as something s/he wished to bring about, and that he intended by her actions to make it

succeed.

Some affirmative conduct by the defendant in planning or carrying out the crime is

necessary. Mere physical presence by the defendant at the place and time the crime is committed

is not by itself sufficient to establish his guilt. However, mere physical presence is enough if it is

intended to help in the commission of the crime.  It is not necessary that you find that the

defendant was actually present while the crime was committed.

The government is not required to prove that anyone discussed or agreed upon a specific

time or method of committing the crime.  The government is not required to prove that the crime

was committed in the particular way planned or agreed upon.  Nor need the government prove

that the principal offender and the person alleged to be the aider and abettor directly

communicated with each other.

I have already instructed you on the elements of each of the offenses with which the defendants are charged. With respect to the charge of [name of offense], regardless of whether a defendant is an aider and abettor or a principal offender, the government must prove beyond a reasonable doubt that the defendant personally acted with [insert mens rea required for the charged offense]. [Repeat as necessary for additional offenses, e.g., with respect to the charge of [name of offense], the government must prove beyond a reasonable doubt that each defendant personally acted with [insert mens rea]]. [When there are alternate mental states that would satisfy the mens rea element of the offense, such as in second degree murder (specific intent to kill or seriously injure or conscious disregard of an extreme risk of death or serious bodily injury), the Court may want to instruct that the principal and the aider and abettor do not need the same mens rea as each other.]

An aider and abettor is legally responsible for the principal's use of a weapon during an offense if the government proves beyond a reasonable doubt that the aider and abettor had actual knowledge that some type of weapon would be used to commit the offense. You may, but are not required to, infer that the aider and abettor knew that some type of weapon would be used to commit the offense from the surrounding circumstances. You may consider any statement made, acts [done] [not done], the reasonable foreseeability that some weapon would be required to commit the offense, and any other facts and circumstances received in evidence that indicate the aider and abettor's knowledge or lack of knowledge.

It is not necessary that all the people who committed the crime be caught or identified.  It is sufficient if you find beyond a reasonable doubt that the crime was committed by someone and that the defendant knowingly and intentionally aided and abetted in committing the crime.

58.    COUNT 1: CONSPIRACY TO COMMIT VIOLENT CRIMES IN AID OF

RACKETEERING ACTIVITY, 18 U.S.C. §§ 1959(a)(5).

In Count 1 of the Indictment, defendants William Cordova, Jose Gutierrez, and Melvin

Sorto are charged with conspiracy to commit violent crimes in aid of racketeering activity.

The Indictment charges that on or about June 2006, and continuing through June 2007,

the defendants were members and associates of a criminal "enterprise" known as La Mara

Salvatrucha, also known as MS-13, which engaged in violent crimes and other activities affecting

interstate commerce, and that they participated in the conduct and affairs of the enterprise

through what is called "racketeering activity."

The essential elements of the offense of conspiracy to commit violent crimes in aid of

racketeering activity, each of which the government must prove beyond a reasonable doubt, are:

(1)    That an enterprise, in this case, an illegal association-in-fact, existed;

(2)    That the charged enterprise engaged in, or its activities affected, interstate or

        foreign commerce;

(3)    That the charged enterprise engaged in "racketeering activity;"

(4)    That the defendant, under consideration by you at the time, knowingly and

        willingly committed, conspired, or attempted to commit: murder, maiming,

        assault with a dangerous weapon, and threats;

(5)    That the conspiracy to commit murder, maiming, assault with a dangerous

        weapon, and threats were committed for the purpose of gaining entrance to or

        maintaining or increasing position in the charged enterprise.

### First Element

The first element that the government must prove beyond a reasonable doubt is that the "enterprise" alleged in the indictment existed.  The term "enterprise" includes a group of persons associated in fact, even though their association is not recognized as a legal entity, such as a corporation or a partnership.  A group or association of persons can be an "enterprise" if these individuals have joined together for the purpose of engaging in a common course of conduct over a period of time. Such an association may be established by evidence showing an ongoing organization, formal or informal, and by evidence that the individuals making up the association functioned as a continuing unit.  Such an association of individuals may retain its status as an "enterprise" even though the membership of the association changes by the addition or loss of individuals during the course of its existence.

In this case, the Indictment charges that an illegal association-in-fact enterprise existed, and that it was an association of individuals involved in a conspiracy to murder, maim, assault, and threaten to enrich the MS-13 enterprise and its members; to preserve, expand, and protect the power, territory, and prestige of the MS-13 enterprise; to promote and enhance the MS-13 enterprise and its members' and associates' activities; to keep victims in fear of the MS-13 enterprise and in fear of its members and associates through intimidation, violence, and threats of violence; to confront and retaliate against rival gangs through the use of intimidation, violence, threats of violence, assaults, and murders; and to fund MS-13 related activities and financially support members of the MS-13 enterprise who have been deported or imprisoned for gang-related activities.

<u>Second Element</u>

The government must also prove beyond a reasonable doubt that the enterprise engaged in, or its activities affected, interstate commerce. "Interstate commerce" means commerce between the states of the United States, or between states and the District of Columbia. It is not necessary for the government to show that a defendant knew that the enterprise would affect interstate commerce or that he intended to affect interstate commerce. The evidence also need not show any particular degree of an effect on interstate commerce.

Here, the Indictment alleges, and the government presented evidence of, numerous violent crimes committed in the District of Columbia, Maryland, Virginia, and elsewhere in furtherance of the MS-13 enterprise. The government presented evidence during the trial that money was transferred from the District of Columbia to countries to further the MS-13 enterprise. In addition, there was evidence that members of the conspiracy possessed firearms and ammunition in the District of Columbia and that no firearms or ammunition are manufactured in the District of Columbia. If you accept the government's evidence, you may find that the enterprise engaged in or its activities affected interstate commerce.

<u>Third Element</u>

The government must also prove beyond a reasonable doubt that the enterprise engaged in "racketeering activity."  Racketeering activity, as defined by the RICO statute, includes any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical which is chargeable under State law an punishable by imprisonment for more than one year.

<u>Fourth Element</u>

The government must also prove that each defendant knowingly and intentionally agreed with another person or persons to conduct, attempt to conduct, participate, or conspire to commit the conduct of the affairs of the enterprise.  In other words, the government must prove that each defendant agreed to take, or conspired to take, some part in the operation or management of the enterprise.  For this offense, the government does not have to prove that a defendant maintained a formal position in the enterprise or that the defendant was part of upper management.  It is enough if the government proves beyond a reasonable doubt that the defendant, even if he is a lower-rung participant, participated in the operation or management of the enterprise.

<u>Fifth Element</u>

Finally, the government must also prove beyond a reasonable doubt that each defendant, considered by you at the time, committed, attempted to commit, or conspired to commit: murder, maiming, assault with a dangerous weapon, and threats were committed for the purpose of gaining entrance to or maintaining or increasing position in the charged enterprise.  In order to establish that a crime of violence listed above was committed for the purpose of "gaining entrance to, maintaining, or increasing" a position in the enterprise, the government must prove that the defendant's general purpose in committing the crime was to gain entrance to, increase, or maintain his position in the enterprise.  Self-promotion need not have been the defendant's only, or even his primary concern, if it was committed as an integral aspect of membership in the enterprise.  The motive requirement is thus satisfied if the defendant committed the violent crime because he knew it was expected of him by reason of his membership in the enterprise, or that he committed it in furtherance of that membership, or because it would enhance his position or

prestige within the enterprise.  These examples are by way of illustration and are not exhaustive.

The elements of the offense of "murder" are listed in instruction 63.

The elements of the offense of "maiming" are listed in instruction 66.

The elements of the offense of "assault with a dangerous weapon" are listed in instruction 60.

The elements of the offense of "threats" are listed in instruction 67.

The defendants are charged with conspiring to commit violent crimes in aid of racketeering, to wit: murder, maiming, assault with dangerous weapon, and threats.  It is against the law to agree with someone to commit the crimes of murder, maiming, assault with dangerous weapon, and threats.

The charge of conspiracy to commit violent crimes in aid of racketeering, is a separate charge from the offenses of murder in aid of racketeering as set forth in Count 2 of the indictment, assault with a dangerous weapon in aid of racketeering as set forth in Counts 3 and 17 of the Indictment, maiming in aid of racketeering as set forth in Count 10 of the Indictment, and threatening to commit a crime of violence as set forth in Count 11 of the Indictment.  You must consider each defendant separately in deciding whether the government has proved each of the elements as to that person.

The government is not required to prove that the objective was achieved. The elements of conspiracy, each of which the government must prove beyond a reasonable doubt, are that:

(1)     That between June 2006 continuing through June 2007, an agreement existed between two or more people to commit violent crimes in aid of racketeering.  This does not have to be a formal agreement or plan, in which everyone involved sat

down together and worked out the details.  On the other hand, merely because people get together and talk about common interests, or do similar things does not necessarily show that an agreement exists to commit violent crimes in aid of racketeering.  It is enough that the government proves beyond a reasonable doubt that there was a common understanding among those who were involved to commit the crimes.  So, the first thing that must be shown is the existence of an agreement.

(2)     That the defendants intentionally joined in that agreement. It is not necessary to find the defendants agreed to all the details of the crime, or that the knew the identity of all the other people the government has claimed were participating in the agreement.  A person may become a member of a conspiracy even if that person agrees to play only a minor part, as long as that person understands the unlawful nature of the plan and voluntarily and intentionally joins in it with the intent to advance or further the unlawful object of the conspiracy.  Even if any one of the defendants were not part of the agreement at the very start, he can become a member of a conspiracy later if the government proves that he intentionally joined the agreement. Different people may become part of the conspiracy at different times.  But mere presence at the scene of the agreement or of the crime, or merely being with the other participants, does not show that a defendant knowingly joined in the agreement.  Also, unknowingly acting in a way that helps the participants, or merely knowing about the agreement itself, without more, does not make the defendant part of the conspiracy. So the second thing that must be shown is that

the defendants were part of the conspiracy.

(3)     That one of the people involved in the conspiracy did something for the purpose

of carrying out the conspiracy. This something is referred to as an overt act. The

charged overt act[s] [is] [are] [describe charged overt act[s]]. [The government

need not prove that all of these overt acts were taken, but in order to find the

defendant guilty, you must all agree on at least one overt act that was done.

A conspiracy can be proved indirectly, by facts and circumstances that lead to a

conclusion that a conspiracy existed. The government must prove that such facts and

circumstances existed and that they lead to the conclusion that a conspiracy existed.

In deciding whether a conspiracy existed, you may consider the acts and statements of all

the alleged participants. In deciding whether the defendants became a members of that

conspiracy, you may consider only the acts and statements of that particular defendant.

In summary, a conspiracy is a kind of partnership in crime. For any defendant to be

convicted of the crime of conspiracy, the government must prove two [three] things beyond a

reasonable doubt: first, that during June 2006 continuing to June 2007 there was an agreement to

commit violent crimes; and second, that the defendants intentionally joined in that agreement;

and third, that one of the people involved in the conspiracy did one of the overt acts charged.

59.     COUNT 2: MURDER IN AID OF RACKETEERING ACTIVITY, 18 U.S.C. §§ 1959(a)(1).

In Count 2 of the Indictment, defendants William Cordova, Jose Gutierrez, and Melvin Sorto are charged with committing murder in aid of racketeering activity.

The essential elements of the offense of murder in aid of racketeering activity, each of which the government must prove beyond a reasonable doubt, are:

(1)     That an "enterprise," as I have defined that term to you in instruction 58, in this case, an illegal association-in-fact, existed;

(2)     That the charged enterprise engaged in, or its activities affected, "interstate or foreign commerce," as I have defined those terms to you in Instruction 58;

(3)     That the charged enterprise engaged in "racketeering activity," as I have defined those terms to you in Instruction 58;

(4)     That the defendant, under consideration by you at the time, knowingly and willingly committed murder;

(5)     That the murder was committed for the purpose of "gaining entrance to or maintaining or increasing position in the charged enterprise," as I have explained those terms to you in Instruction 58.

The elements of the offense of "murder" are listed in instruction 63.

60.     COUNT 3: ASSAULT WITH A DANGEROUS WEAPON AID OF RACKETEERING

ACTIVITY, 18 U.S.C. §§ 1959(a)(3).

In Count 3 of the Indictment, defendants William Cordova, Jose Gutierrez, and Melvin

Sorto are charged with committing assault with a dangerous weapon in aid of racketeering

activity.

The essential elements of the offense of assault with a dangerous weapon in aid of

racketeering activity, each of which the government must prove beyond a reasonable doubt, are:

(1)     That an "enterprise," as I have defined that term to you in Instruction 58, in this

case, an illegal association-in-fact, existed;

(2)     That the charged enterprise engaged in, or its activities affected, "interstate or

foreign commerce," as I have defined those terms to you in Instruction 58;

(3)     That the charged enterprise engaged in "racketeering activity," as I have defined

those terms to you in Instruction 58;

(4)     That the defendant, under consideration by you at the time, knowingly and

willingly committed the assault with a dangerous weapon;

(5)     That the assault with a dangerous weapon was committed for the purpose of

"gaining entrance to or maintaining or increasing position in the charged

enterprise," as I have defined those terms to you in Instruction 58.

The elements of assault with a dangerous weapon, each of which the government must

prove beyond a reasonable doubt, are that:

(1)     That the defendants, with force or violence, injured or attempted or tried to injure

Nelson Maldonado;

(2)     That the defendants did so voluntarily, on purpose, and not by mistake or accident;

(3)     That at the time, the defendants had the apparent ability to injure Nelson

Maldonado;

(4)     That the defendants committed the act with a dangerous weapon.

"Dangerous weapon," is an object designed to be used, actually used, or threatened to be used, in a manner likely to produce death or serious bodily injury. The government need not prove the defendant actually killed, injured or even touched Nelson Maldonado with the weapon. Voluntarily pointing a dangerous weapon at another person in a threatening manner, or voluntarily using it in a way that would reasonably create in the other person a fear of immediate injury, would be an assault with a dangerous weapon.

"Injury," means any physical injury, however small, including a touching offensive to a reasonable person. The government must prove a threatening act; mere words are not sufficient. The government need not prove the defendant intended to injure Nelson Maldonado.

61.     COUNT 4: ILLEGAL ALIEN IN POSSESSION OF A FIREARM, 18 U.S.C. § 922(g)(5)(A).

In Count 4 of the Indictment, defendants William Cordova, Jose Gutierrez, and Melvin Sorto are charged with being aliens illegally and unlawfully in the United States and knowingly possessing a firearm in and affecting commerce.

The essential elements of the offense of illegal alien in possession of a firearm, each of which the government must prove beyond a reasonable doubt, are:

(1)     That the defendant knowingly possessed, transported, received the firearm as charged;

(2)     That at the time he possessed, transported, received the firearm, the defendant was an alien, that is was not a citizen or national of the United States, illegally and unlawfully in the United States;

(3)     That the possession of the firearm was in or affecting "commerce," as I defined that term to you in instruction 58.

"Possession" is defined in Instruction 56.

"Firearm is defined in Instruction 63.

62.     COUNTS 5 and 6: USING, CARRYING, AND POSSESSING A FIREARM DURING

AND IN RELATION TO A CRIME OF VIOLENCE, 18 U.S.C. 924(c)(1)(A).

In Counts 5 and 6 of the Indictment, defendants William Cordova, Jose Gutierrez, and

Melvin Sorto are charged with unlawfully and knowingly, using and carrying during and in

relation to, and possessed in furtherance of, a crime(s) of violence which is prosecutable in a

court of the United States, in this case murder in aid of racketeering as set forth and charged in

Count 2 of the Indictment and the assault with a dangerous weapon in aid of racketeering as set

forth in Count 3 of the Indictment.

The essential elements of using, carrying, and possessing a firearm during and in relation

to a crime of violence, each of which the government must prove beyond a reasonable doubt, are:

(1)     That the defendants committed the elements of a crime of violence crime

prosecutable in federal court, to wit: murder in aid of racketeering as set forth in

Count 2 of the Indictment and assault with a dangerous weapon in aid of

racketeering as set forth in Count 3 of the Indictment;

(2)     That the defendant knowingly used, carried or possessed a firearm;

(3)     That the use or carrying of the firearm was during and in relation to, or the

possession of the firearm was in furtherance of the defendant's crime of violence,

to wit: murder in aid of racketeering as set forth in Count 2 of the Indictment and

assault with a dangerous weapon in aid of racketeering as set forth in Count 3 of

the Indictment.

"Possession" is defined in Instruction 56.

"Firearm" is defined in Instruction 63.

63.     COUNT 7: FIRST DEGREE MURDER (PREMEDITATE) WHILE ARMED.

In Count 7 of the Indictment, defendants William Cordova, Jose Gutierrez, and Melvin

Sorto are charged with committing the murder (premeditated) of Edwin Ventura while armed

with a firearm, that is a pistol.

The essential elements of first degree murder (premeditated), each of which the

government must prove beyond a reasonable doubt, are:

(1)     That the defendants caused the death of Edwin Ventura;

(2)     That the defendants intended to kill Edwin Ventura;

(3)     That the defendants did so after premeditation;

(4)     That the defendants did so after deliberation.

(5)     That the defendants committed the offense of murder while armed with a weapon,

that is a pistol.

"Premeditation" means forming an intent to kill. To premeditate is to give thought, before

acting, to taking a human life, and then to reach a definite decision to kill.

"Deliberation" means considering and reflecting on the intent to kill, turning it over in the

mind, giving it second thought.

"pistol" means a firearm that has a barrel less than 12 inches in length or that was

originally designed to be fired with a single hand. The term "firearm" means a weapon,

regardless of operability, which will or is designed or redesigned, made or remade, readily

converted, restored, or repaired or is intended to expel a bullet or other projectile(s) by the action

of an explosive.

Premeditation--the formation of an intent to kill--may be instantaneous, as quick as

thought itself. Deliberation, however, requires some time to have elapsed between formation of this intent and the fatal act, within which one pauses and actually gives second thought and consideration to the intended act. The law does not require that deliberation take any particular amount of time. It can be days, hours or minutes, or it can be as brief as a few seconds. It varies according to the circumstances of each case. It is the fact of deliberation that the government must prove, not the length of time it may have gone on.

You have heard evidence that the defendants used a weapon. If you decide that they did use a weapon, you may consider the nature of the weapon, the way the defendants used it, and other circumstances surrounding its use. If use of the weapon under all the circumstances would naturally and probably have resulted in death, you may conclude that the defendants intended to kill Edwin Ventura. Or you may conclude that they intended to inflict serious bodily injury or acted in conscious disregard of an extreme risk of death or serious bodily injury. But you are not required to reach any of these conclusions. Consider all the evidence in deciding whether the defendants had the required state of mind.

64.     COUNT 8: ASSAULT WITH INTENT TO KILL WHILE ARMED, 22 D.C. Code §§ 401, 4502.

In Count 8 of the Indictment, defendants William Cordova, Jose Gutierrez, and Melvin Sorto are charged with committing the assault with intent to kill of Nelson Maldonado while armed with a firearm, that is a pistol.

The essential elements of assault with intent to kill while armed, each of which the government must prove beyond a reasonable doubt, are:

(1)     That the defendants with force or violence, injured or attempted to injure Nelson Maldonado;

(2)     That the defendants did so voluntarily, on purpose, and not by mistake or accident;

(3)     That at that time, the defendants had the apparent ability to injure Nelson Maldonado;

(4)     That at that time, the defendants intended to kill Nelson Maldonado;

(5)     That the defendants committed the offense of assault with intent to kill while armed with a weapon, that is a "pistol," as I have defined that term, and the inferences you may reach in considering evidence of a weapon, to you in instruction 63.

65.	COUNT 9:  POSSESSION OF A FIREARM DURING A CRIME OF VIOLENCE OR DANGEROUS OFFENSE, 22 D.C. Code § 4504(b).

In Count 9 of the Indictment, defendants William Cordova, Jose Gutierrez, and Melvin Sorto are charged with possession a firearm during a crime of violence or dangerous offense.

The essential elements of possession a firearm during a crime of violence or dangerous offense., each of which the government must prove beyond a reasonable doubt, are: The elements of the offense of possession of a firearm during the commission of a crime of violence or dangerous crime, each of which the government must prove beyond a reasonable doubt, are that:

(1)	That the defendants possessed a pistol;

(2)	That the defendants possessed the pistol while committing a crime of violence or dangerous crime;

(3)	That the defendants did so voluntarily and on purpose, and not by mistake or accident.

"Possession" is defined in instruction 56.

"Firearm" is defined in instruction 63.

The offense murder as set forth in Count 8 of the Indictment is a crime of violence or dangerous crime in the District of Columbia. If you find the defendants not guilty of the offense of murder as set forth in Count 8 of the Indictment, you must find the defendants not guilty of this offense, also.

66.     COUNT 10: MAIMING IN AID OF RACKETEERING ACTIVITY, 18 U.S.C. §§ 1959(a)(2)**.**

In Count 10 of the Indictment, defendants William Cordova and Jose Gutierrez are charged with committing the offense of maiming in aid of racketeering activity.

The essential elements of the offense of maiming in aid of racketeering activity, each of which the government must prove beyond a reasonable doubt, are:

(1)     That an "enterprise," as I have defined that term to you in Instruction 58, in this case, an illegal association-in-fact, existed;

(2)     That the charged enterprise engaged in, or its activities affected, "interstate or foreign commerce," as I have defined those terms to you in Instruction 58;

(3)     That the charged enterprise engaged in "racketeering activity," as I have defined those terms to you in Instruction 58;

(4)     That the defendants, under consideration by you at the time, knowingly and willingly committed the offense of maiming;

(5)     That the maiming was committed for the purpose of gaining entrance to or "maintaining or increasing position in the charged enterprise," as I have defined those terms to you in Instruction 58.

The elements of the offense of "mayhem" or "maiming," each of which the government must prove beyond a reasonable doubt, are that:

(1)     That the defendants caused a permanent disabling injury to Feliciana Esquina-Flores. A permanent disabling injury is one that either renders a member or organ of the body wholly useless or leaves its usefulness greatly impaired;

(2)     That the defendants acted voluntarily and on purpose, and not by mistake or

        accident;

(3)     That the defendants intended to permanently or seriously injure Feliciana Esquina-

        Flores or were aware that their conduct created an extreme risk of permanent or

        serious bodily injury to Feliciana Esquina-Flores but engaged in that conduct

        nonetheless;

(4)     There were no mitigating circumstances.

67.     COUNT 11: THREATENING TO COMMIT A CRIME OF VIOLENCE IN AID OF
RACKETEERING ACTIVITY, 18 U.S.C. §§ 1959(a)(4)**.**

In Count 11 of the Indictment, defendants William Cordova and Jose Gutierrez are
charged with threatening to commit a crime of violence in aid of racketeering activity.

The essential elements of the offense of threatening to commit a crime of violence in aid
of racketeering activity, each of which the government must prove beyond a reasonable doubt,
are:

(1)     That an "enterprise," as I have defined that term to you in Instruction 58, in this
case, an illegal association-in-fact, existed;

(2)     That the charged enterprise engaged in, or its activities affected, "interstate or
foreign commerce," as I have defined those terms to you in Instruction 58;

(3)     That the charged enterprise engaged in "racketeering activity," as I have defined
those terms to you in Instruction 58;

(4)     That the defendant, under consideration by you at the time, knowingly and
willingly committed the offense of threatening to commit a crime of violence;

(5)     That the threatening to commit a crime of violence committed for the purpose of
gaining entrance to or "maintaining or increasing position in the charged
enterprise," as I have defined those terms to you in Instruction 58.

The elements of threats, each of which the government must prove beyond a reasonable
doubt, are that:

(1)     That the defendants spoke words heard by received by, otherwise communicated
to Feliciana Esquina-Flores;

(2)     That the words of the defendants spoke would cause a person reasonably to

believe that she, Feliciana Esquina-Flores would be  seriously harmed if the threat

occurred; and

(3)     The defendants intended Feliciana Esquina-Flores to believe that she would be

seriously harmed if the threat occurred.

(4)      The government is not required to prove that the defendants intended to carry out

the threat.

It is not necessary that the intended victim actually heard the words, or learned about

them.

In considering whether the government has proved beyond a reasonable doubt that the

defendants threatened Feliciana Esquina-Flores, you should consider all the evidence, including

the circumstances under which the words were spoken/written; facial expression, body language,

tone and inflection, punctuation, and other ways of giving words meaning; and the nature of the

relationship between the parties.

68.     COUNT 12: ILLEGAL ALIEN IN POSSESSION OF A FIREARM, 18 U.S.C. § 922(g)(5)(A)**.**

In Count 12 of the Indictment, defendants William Cordova and Jose Gutierrez are charged with being aliens illegally and unlawfully in the United States and knowingly possessing a firearm in and affecting commerce.

The essential elements of the offense of illegal alien in possession of a firearm, each of which the government must prove beyond a reasonable doubt, are:

(1)     That the defendants knowingly possessed, transported, received the firearm as charged;

(2)     That at the time the defendants possessed, transported, received the firearm, the defendant was an alien, that is was not a citizen or national of the United States, illegally and unlawfully in the United States;

(3)     That the possession of the firearm was in or affecting "commerce," as I defined that term to you in Instruction 58.

"Possession" is defined in instruction 56.

'Firearm" is defined in instruction 63.

69.     COUNTS 13 and 14: USING, CARRYING, AND POSSESSING A FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE, 18 U.S.C. § 924(c)(1)(A).

In Counts 13 and 14 of the Indictment, defendants William Cordova and Jose Gutierrez, are charged with unlawfully and knowingly, using and carrying during and in relation to, and possessed in furtherance of, a crime(s) of violence which is prosecutable in a court of the United States, in this case maiming in aid of racketeering as set forth and charged in Count 10 of the Indictment and the threatening to commit a crime of violence in aid of racketeering as set forth in Count 11 of the Indictment.

The essential elements of using, carrying, and possessing a firearm during and in relation to a crime of violence, each of which the government must prove beyond a reasonable doubt, are:

(1)     That the defendants committed the elements of a crime of violence crime prosecutable in federal court, to wit: maiming in aid of racketeering as set forth in Count 10 of the Indictment and threatening to commit a crime of violence in aid of racketeering as set forth in Count 11 of the Indictment;

(2)     That the defendants knowingly used, carried or possessed a firearm;

(3)     That the use or carrying of the firearm was during and in relation to, or the possession of the firearm was in furtherance of the defendant's crime of violence, to wit: maiming in aid of racketeering as set forth in Count 10 of the Indictment and threatening to commit a crime of violence in aid of racketeering as set forth in Count 11 of the Indictment.

"Possession" is defined in instruction 56.

"Firearm" is defined in instruction 63.

70.      COUNT 15: ASSAULT WITH INTENT TO KILL WHILE ARMED, 22 D.C. Code § §

401, 4502.

In Count 15 of the Indictment, defendants William Cordova and Jose Gutierrez are

charged with committing the assault with intent to kill of Feliciana Esquina-Flores while armed

with a firearm, that is a pistol.

The essential elements of assault with intent to kill while armed, each of which the

government must prove beyond a reasonable doubt, are:

(1)      That the defendants with force or violence, injured or attempted to injure

Feliciana Esquina-Flores;

(2)      That the defendants did so voluntarily, on purpose, and not by mistake or accident;

(3)      That at that time, the defendants had the apparent ability to injure Feliciana

Esquina-Flores;

(4)      That at that time, the defendants intended to kill Feliciana Esquina-Flores;

(5)      That the defendants committed the offense of assault with intent to kill while

armed with a weapon, that is a "pistol," as I have defined that term, and the

inferences you may reach in considering evidence of a weapon, to you in

Instruction 63.

71.     COUNT 16:  POSSESSION OF A FIREARM DURING A CRIME OF VIOLENCE

OR DANGEROUS OFFENSE, 22 D.C. Code § 4504(b).

In Count 16 of the Indictment, defendants William Cordova and Jose Gutierrez are

charged with possession a firearm during a crime of violence or dangerous offense.

The elements of the offense of possession of a firearm during the commission of a crime

of violence or dangerous crime, each of which the government must prove beyond a reasonable

doubt, are that:

(1)     That the defendants possessed a pistol;

(2)     That the defendants possessed the pistol while committing a crime of violence or

dangerous crime;

(3)     That the defendants did so voluntarily and on purpose, and not by mistake or

accident.

"Pistol" is defined in instruction 63.

"Possession" is defined in instruction 58.

The offense assault with intent to kill while armed as set forth in Count 15 of the

Indictment is a crime of violence or dangerous crime in the District of Columbia. If you find the

defendants not guilty of the offense of assault with intent to kill as set forth in Count 15 of the

Indictment, you must find the defendants not guilty of this offense, also.

72.     COUNT 17: ASSAULT WITH A DANGEROUS WEAPON AID OF RACKETEERING

ACTIVITY, 18 U.S.C. §§ 1959(a)(3).

In Count 17 of the Indictment, defendants William Cordova and Jose Gutierrez are charged with committing assault with a dangerous weapon in aid of racketeering activity.

The essential elements of the offense of assault with a dangerous weapon in aid of racketeering activity, each of which the government must prove beyond a reasonable doubt, are:

(1)     That an "enterprise," as I have defined that term to you in Instruction 58, in this case, an illegal association-in-fact, existed;

(2)     That the charged enterprise engaged in, or its activities affected, "interstate or foreign commerce," as I have defined those terms to you in Instruction 58;

(3)     That the charged enterprise engaged in "racketeering activity," as I have defined those terms to you in Instruction 58;

(4)     That the defendant, under consideration by you at the time, knowingly and willingly committed the assault with a dangerous weapon;

(5)     That the assault with a dangerous weapon was committed for the purpose of "gaining entrance to or maintaining or increasing position in the charged enterprise," as I have defined those terms to you in Instruction 58.

The elements of the offense of assault with a dangerous weapon are listed in instruction 60.

73.     COUNT 18: ILLEGAL ALIEN IN POSSESSION OF A FIREARM, 18 U.S.C. § 922(g)(5)(A).

In Count 18 of the Indictment, defendants William Cordova and Jose Gutierrez are charged with being aliens illegally and unlawfully in the United States and knowingly possessing a firearm in and affecting commerce.

The essential elements of the offense of illegal alien in possession of a firearm, each of which the government must prove beyond a reasonable doubt, are:

(1)     That the defendants knowingly possessed, transported, received the firearm as charged;

(2)     That at the time the defendants possessed, transported, received the firearm, the defendants were an aliens, that is were not citizens or national of the United States, illegally and unlawfully in the United States;

(3)     That the possession of the firearm was in or affecting "commerce," as I defined that term to you in Instruction 60.

"Possession" is defined in instruction 56.

"Firearm" is defined in instruction 63.

75.     COUNT 19: USING, CARRYING, AND POSSESSING A FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE, 18 U.S.C. § 924(c)(1)(A).

In Count 19 of the Indictment, defendants William Cordova and Jose Gutierrez are charged with unlawfully and knowingly, using and carrying during and in relation to, and possessed in furtherance of, a crime(s) of violence which is prosecutable in a court of the United States, in this case assault with a dangerous weapon in aid of racketeering as set forth and charged in Count 17 of the Indictment.

The essential elements of using, carrying, and possessing a firearm during and in relation to a crime of violence, each of which the government must prove beyond a reasonable doubt, are:

(1)     That the defendants committed the elements of a crime of violence crime prosecutable in federal court, to wit: assault with a dangerous weapon in aid of racketeering as set forth in Count 17 of the Indictment;

(2)     That the defendants knowingly used, carried or possessed a firearm;

(3)     That the use or carrying of the firearm was during and in relation to, or the possession of the firearm was in furtherance of the defendant's crime of violence, to wit: assault with a dangerous weapon in aid of racketeering as set forth in Count 17 of the Indictment.

"Possession" is defined in instruction 56.

"Firearm" is defined in instruction 63.


**********************

Respectfully submitted,

RONALD C. MACHEN JR.
United States Attorney

_____/s/_____
NIHAR R. MOHANTY
555 Fourth Street, N.W., Room 4120
Washington, D.C. 20530
(202) 514-7395
nihar.mohanty@usdoj.gov (email)


_____/s/_____
GILBERTO GUERRERO, JR.
Assistant United States Attorney
KS Bar No. 19271
Organized Crime and Narcotics Trafficking Section
555 4th Street, N.W., Room 4814
Washington, D.C. 20530
(202) 514-7298 (desk)
gilberto.guerrero@usdoj.gov (email)


<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the 17th day of September, 2010, a copy of the foregoing Government Proposed Jury Instructions was served by electronic mail on all defense counsel.

_____/s/_____
GILBERTO GUERRERO, JR.
Assistant United States Attorney